## APPEAL OF JAMES R. LISTER.

Docket No. 3411. Submitted June 23, 1925. Decided January 28, 1926.

> Under date of September 30, 1916, the taxpayer entered into a contract with John P. Walworth and Charles W. Walworth by which he obligated himself to work for the corporation of Walworth Brothers, Inc., for a period of three years from the date of the contract at a salary of $100 per week, provided that he would receive at the end of three years 500 shares of the common stock of the corporation, such 500 shares having been issued to and being owned by the two Walworths. For this contract another was substituted, dated September 30, 1917, which provided that the 500 shares of stock in question should be loaned by the owners to Walworth Brothers, Inc., and that there should be credited upon the books of the corporation at the end of each six months one-sixth of the par value of the 500 shares of the stock to be given to the taxpayer. The contract was not carried out according to its terms, but stock was actually transferred some time after the expiration of each year. *Held*, that the taxpayer received income in the year 1919, to the extent of the fair market value of the shares of stock received by him in 1919.

*Herbert A. Rice, Esq.*, for the taxpayer.
*F. O. Graves* and *Arthur H. Murray, Esqs.*, for the Commissioner.

Before JAMES, LITTLETON, SMITH, and TRUSSELL.

This appeal is from the determination of a deficiency in income tax for the year 1919 in the amount of $9,386.42, against which there has been a determination of an overassessment of tax for the year 1918 of $3,349.47, and against which the taxpayer alleges an overpayment of tax for the year 1917 of $2,516.64.

### FINDINGS OF FACT.

The taxpayer is a resident of Clinton, Mass. In 1904 he went to work for Walworth Brothers, a partnership, engaged in the manufacture of woolen goods at Lawrence, Mass., as a designer at a salary of $25 per week. His salary was gradually increased until, in 1916, he was receiving a salary of $92 per week. He had frequently asked for increases in salary and on different occasions was told by his employers that if he would bide his time he would come out all right. In August or September, 1916, the business, which at the time had book assets of approximately $400,000, was incorporated with a capital stock of $1,000,000, divided into 1,000 shares of 7 per cent first preferred stock, 4,000 shares of 7 per cent second preferred stock, and 5,000 shares of common stock, each share having a par value of $100. At the time of incorporation, Walworth Brothers, the partnership, had in their employ certain employees who had been

with them for many years and to whom they proposed to give and did give shares of common stock in the corporation. Two of those employees were the taxpayer and one Henry Finegold. On or about September 30, 1916, the taxpayer was given a certificate for 500 shares of common stock of the newly organized corporation, which he endorsed in blank and turned over to the Walworth brothers in accordance with an agreement which reads in full as follows:

AGREEMENT, made this thirtieth day of September, 1916, between John P. Walworth and Charles W. Walworth of Lawrence, Mass., parties of the first part, and James R. Lister, of said Lawrence, party of the second part, WITNESSETH:

WHEREAS, the co-partnership of Walworth Brothers has been dissolved and there has been formed therefrom a corporation known as Walworth Bros. Incorporated, with a capital stock of one million dollars, divided into one thousand shares of First Preferred Stock; four thousand shares of Second Preferred Stock and five thousand shares of Common Stock; and

WHEREAS, James R. Lister has been in the employ of said co-partnership and intends to continue in the employ of said corporation at a salary of one hundred dollars ($100) per week; and the parties of the first part are the owners of the greater part of the stock of said corporation and desire the said party of the second part to continue in the employ of said corporation and intend to reward him if he faithfully performs his duties to said corporation for a period of three years from this date;

NOW THEREFORE:

1. I, the party of the second part, James R. Lister, do hereby for myself promise and agree with the parties of the first part to remain in the employ of said corporation at a salary of one hundred dollars ($100) per week for a period of three years from this date; and I do hereby agree that I will give my undivided attention to the business of the corporation, faithfully performing all the duties required of me by the officers of said corporation, and will be interested in no other business during said period.

2. The parties of the first part do hereby agree to issue to the said party of the second part five hundred (500) shares of the Common Stock of Walworth Bros. Incorporated.

3. Said party of the second part does hereby agree to endorse in blank said certificates of stock issued to him, and agrees to deliver the same to the said parties of the first part to be held by them in escrow during said period of three years.

4. At the end of said period of three years, if the said party of the second part has continued in the employ of said corporation, the said parties of the first part agree to deliver said certificates to said party of the second part relieved of all trusts and as his absolute property.

5. Should said party of the second part, however, during said period of three years cease to be employed by said corporation, he shall forfeit all rights to said stock. Should said party of the second part, however, die during said period while in the employ of said corporation, the said parties of the first part agree to deliver said stock to the executor or administrator of said party of the second part.

6. It is distinctly understood, however, that said salary of one hundred dollars per week will be in full compensation for all services to be rendered

by said party of the second part to said corporation, and that he shall at all times be under the control and direction of the directors of said corporation.

7. The party of the second part shall be entitled to such dividends as may be declared on said stock while he is in the employ of said corporation during said period of three years.

8. It is further understood and agreed that said stock shall not be assigned during said period of three years by the party of the second part, except to the said parties of the first part, and that any attempt to hypothecate or assign the same shall work a forfeiture of all his interest in said stock.

9. The obligations on the part of the parties of the first part to make said delivery at the end of said three years, provided said party of the second part is then in the employ of said corporation, shall be binding upon said parties of the first part and their heirs, and assigns; and that said parties of the first part do hereby agree at all times during said period while the party of the second part is in the employ of said corporation to keep said certificates in the name of said party of the second part on the books of the Company, and said party of the second part shall have the voting power on said stock so long as it remains in his name on the books of said corporation.

In witness whereof the said John P. Walworth and Charles W. Walworth, parties of the first part, and James R. Lister, party of the second part, hereto set their hands and seals this thirtieth day of September, 1916.

(Signed)        CHARLES W. WALWORTH  [SEAL]
               JOHN P. WALWORTH  [SEAL]
                   *Parties of the First Part.*
(Signed)        JAMES R. LISTER  [SEAL]
                   *Party of the Second part.*

Signed and sealed in presence of:

Henry Finegold and the other employees to whom certificate for shares of stock were given entered into a similar agreement.

About a year after the execution of the above-quoted agreement Charles W. Walworth, the president of the corporation, had numerous conferences at his New York office with his attorney or attorneys relative to a pending Federal income and profits tax law. In August or September, 1917, Charles W. Walworth communicated with the taxpayer and suggested that he and his brother were contemplating the organization of a " sales corporation " and that shares of stock in the sales corporation would be given to the common stockholders of Walworth Brothers, Inc. At that time or a little later he stated to the taxpayer that it would be necessary to substitute for the contract which the taxpayer had with John P. Walworth and Charles W. Walworth another contract, and that this would not affect the taxpayer in any way. He further stated that the object of making the change was for bookkeeping purposes.

The Walworth Sales Corporation was organized under the laws of the State of New York with a capital stock of 1,000 shares of no par value. The shares of stock of this corporation were divided among the common stockholders of Walworth Brothers, Inc., in

the proportion of one share of stock of the sales corporation to each five shares of stock of Walworth Brothers, Inc. The taxpayer received a certificate for 100 shares of stock in Walworth Sales Corporation.

The taxpayer never received any dividends upon the stock of the sales corporation. Under a contract between it and Walworth Brothers, Inc., the sales corporation received a commission of 7½ per cent upon the sale of the product of Walworth Brothers, Inc. It neither bought nor sold the product of any other manufacturer. The actual selling expense was from 1¼ per cent to 1½ per cent of the sales price. The sales corporation's earnings were used to retire the preferred stock of Walworth Brothers, Inc., such preferred stock being owned principally, if not entirely, by John P. Walworth and Charles W. Walworth. The office of the sales corporation was the office of Walworth Brothers, Inc., in New York City.

The contract of September 30, 1916, above quoted, was delivered up by the taxpayer to Charles W. Walworth in 1917, and the taxpayer was led to accept in substitution therefor a contract which reads as follows:

AGREEMENT made this 30th day of September, 1917, between WALWORTH BROS. INCORPORATED, a body corporate of Lawrence, Mass., organized under the laws of the State of Maine, party of the first part; JAMES R. LISTER, of Methuen, Mass., party of the second part; and CHARLES W. WALWORTH, of Greenwich, Conn., and JOHN P. WALWORTH, of Lawrence, Mass., parties of the third part; WITNESSETH:

WHEREAS, the copartnership of Walworth Brothers has been dissolved and there has been formed therefrom the above corporation with a capital stock of one million dollars, divided into one thousand shares of first preferred stock, four thousand shares of second preferred stock, and five thousand shares of common stock; and

WHEREAS, James R. Lister has been in the employ of said copartnership and intends to continue in the employ of said corporation at a cash salary of one hundred dollars per week, to be paid to him weekly, and as additional compensation certain shares of stock as hereinafter provided, said stock, however, to be paid to him only in the event that he faithfully performs his duties to said corporation for a period of three years from September 30, 1916;

Now THEREFORE:

(1) I, the said party of the second part, James R. Lister, do hereby promise and agree with the parties of the first part to remain in the employ of said corporation for a period of three years from September 30, 1916, at a salary of one hundred dollars per week, to be paid to me weekly, and certain shares of stock to be credited to me on the terms and conditions herein contained. I do hereby agree that I will give my undivided attention to the business of said corporation, faithfully performing all duties required of me by the officers of said corporation, and will be interested in no other business during said period.

(2) The party of the first part does hereby agree to issue or to procure and have issued to said party of the second part five hundred shares of common stock of Walworth Bros. Incorporated and one hundred shares of stock of Walworth Sales Corporation of no nominal or par value.

(3) Said party of the second part does hereby agree to endorse in blank said certificates of stock issued to him, and agrees to deliver the same to Charles W. Walworth and John P. Walworth to be held by them in escrow during said period of three years.

(4) At the end of said period of three years, if the said party of the second part has continued in the employ of said corporation, it is agreed that the said Charles W. Walworth and John P. Walworth shall deliver said certificates to said party of the second part relieved of all trusts as his absolute property.

(5) Should the said party of the second part, however, during said period of three years cease to be employed by the said corporation he shall forfeit all his rights to said stock, in which event it is agreed that said five hundred (500) shares of common stock of Walworth Bros. Incorporated and said one hundred (100) shares of stock of Walworth Sales Corporation of no nominal or par value shall be transferred into the name of Charles W. Walworth and John P. Walworth; and in the event of said James R. Lister forfeiting his rights to said stock, he does hereby assign, transfer and set over all his rights to said stock and to the salary earned by him for services rendered to the corporation in excess of one hundred dollars per week to the said Charles W. Walworth and John P. Walworth. Should said party of the second part, however, die during the said period, while in the employ of said corporation, it is agreed that the said stock shall be delivered to the executor or administrator of the said party of the second part freed from all trusts.

(6) It is distinctly understood that the party of the second part shall at all times be under the control and direction of the directors of said corporation.

(7) The party of the second part shall be entitled to such dividends as may be declared upon said stock while he is in the employ of said corporation during said period of three years.

(8) It is further understood and agreed that said stock shall not be assigned during said period of three years by the party of the second part except to said Charles W. Walworth and John P. Walworth, and that any attempt to hypothecate or assign the same to others than the above shall forfeit all his interests in said stock.

(9) The obligation on the part of the said Charles W. Walworth and John P. Walworth to make said delivery at the end of said three years, provided said party of the second part is then in the employ of said corporation, shall be binding upon the said Charles W. Walworth and John P. Walworth and their heirs and assigns, and the said Charles W. Walworth and John P. Walworth do hereby agree at all times during said period, while the party of the second part is in the employ of said corporation, to keep said certificates in the name of said party of the second part on the books of the corporations, and that the party of the second part shall have the voting powers on said stock so long as it remains in his name on the books of said corporations.

(10) It is further agreed that semi-annually during said period of three years there shall be credited to the party of the second part on the books of the corporation one-sixth of the par value of said five hundred shares of common stock of Walworth Bros. Incorporated and one-sixth of said one hundred shares of stock of Walworth Sales Corporation of no nominal or par value, which shall be carried as an obligation of the party of the first part to the said James R. Lister for services rendered during the preceding six months, but which shall be cancelled on delivery of said stock at the end of said period of three years. Said credit, however, shall not be assignable or hypothecated, and any attempt to hypothecate or assign the same shall work a forfeiture of his rights to said salary.

(11) The said Charles W. Walworth and John P. Walworth are the present owners of said five hundred shares of common stock of Walworth Bros. Incorporated and said one hundred shares of stock of Walworth Sales Corporation of no nominal or par value, and it is agreed that they are loaning the same to the corporation to enable this agreement to be carried out. And it is further understood and agreed that if at the end of three years the said party of the second part has earned said stock, or, on account of death, the said stock has been delivered in accordance with this agreement, the obligation of the corporation to return or pay for said stock to said parties of the third part will at the end of said period of three years be cancelled.

(12) It is agreed between all the parties hereto that the agreement made between them dated September 30, 1916, be and it hereby is cancelled.

IN WITNESS WHEREOF, the parties hereto and to another instrument of like tenor set their hands and seals the day and year first above written.

|  |  |
|---|---|
| (Signed) | WALWORTH BROTHERS. |
| By | C. W. WALWORTH. |
| (Signed) | JAMES R. LISTER. |
| (Signed) | C. W. WALWORTH. |
| (Signed) | JOHN P. WALWORTH. |

This substituted contract was received by the taxpayer several weeks after its date. Finegold's substituted contract was received in the latter part of October or the first part of November, 1917. The contract was not carried out according to its terms. A certificate for 166 shares of common stock of Walworth Brothers, Inc., was turned over to the taxpayer in January or February, 1918. At the time this certificate was delivered the certificate for 500 shares in the name of the taxpayer, held in escrow, was canceled and a new certificate for 334 shares made out in the name of the taxpayer was endorsed by the taxpayer and turned over to John P. Walworth, to be held in escrow in place of the original certificate held in escrow. The taxpayer filed an income-tax return for 1917 in February, 1918, upon which a tax of $107.25 was shown to be due. In this return the taxpayer did not report the receipt of any income in respect of the 166 shares of stock of Walworth Brothers, Inc., turned over to him in January or February, 1918. Charles W. Walworth obtained knowledge of this fact and threatened to report the taxpayer for having filed a false return. He told the taxpayer that the return did not accord with the corporation's books of account and that he must file an amended return reporting the receipt of $16,600 additional salary, inasmuch as that amount of salary had been charged up to him on the corporation's books of account. The taxpayer protested that the shares of stock were a gift to him in respect of services which he had performed over a long period of years for the partnership and that, as a gift, they were not taxable as income; furthermore, that the additional tax which would be due from him upon the reporting of the receipt of such a large amount as salary would amount to more than $2,400, and that he had not received income which would war-

rant the payment of such a tax—approximately one-half of his salary. After considerable wrangling, Charles W. Walworth agreed that the corporation would purchase from the taxpayer 24 shares of stock at par, which would enable him to pay the additional tax which would be due from him. Thereupon, the taxpayer turned over to the corporation his certificate for 166 shares and received a new certificate for 142 shares and the corporation's check for $2,400, which the taxpayer turned over to the collector in part payment of the additional tax shown to be due by his amended return, the total tax due upon that return being $2,623.89.

In the early part of 1919, the taxpayer received an additional certificate for 166 shares of stock. An income-tax return was made out for the taxpayer by the attorney for Walworth Brothers, Inc., for the year 1918, and in it was reported the receipt of his regular salary plus an additional salary represented by the stock certificate of $16,600. The tax due upon the taxpayer's return for 1918 was in excess of $3,200 and the taxpayer's employer or Charles W. Walworth purchased from him 36 shares of stock at $100 per share to enable him to pay his tax. .

In the year 1919, the taxpayer was given an additional certificate for 168 shares of stock. The certificate was turned over to the taxpayer during the latter part of 1919. To enable the taxpayer to pay his income tax for 1919, Walworth Brothers, Inc., or Charles W. Walworth, purchased from him 32 shares of common stock at par.

The taxpayer left the employ of Walworth Brothers, Inc., in 1920 and endeavored to sell the 428 shares of stock which he had received but had not sold to his employer or to Charles W. Walworth. His brokers found no market for the shares. They were finally sold in 1921 at $12 per share. The taxpayer received approximately $5,000 from the sale.

Dividends at the rate of 6 per cent per annum were paid upon the common stock for 1918, 1919, and 1920, and the taxpayer received the dividends upon the shares of stock standing in his name.

There were no sales of the stock in 1917 or 1918, except the purchases by the corporation or by Charles W. Walworth of the stock of the employees under substituted contracts similar to the one dated September 30, 1917, quoted above, all of these purchases being at a price of $100 per share. In 1919, Walworth Brothers, Inc., desired to terminate the employment of Henry Finegold, who had proven to be a troublemaker in respect of the compensation and dividends which he had been receiving upon his stock. He had approximately 444 shares of stock at the time, and the corporation offered him $8,000 or $9,000 for them. This amount Finegold refused to accept, on the ground that he owed about $20,000 and had to raise money to pay that amount of indebtedness.

The corporation finally agreed to pay him $20,000 for his 444 shares in order to get him out of the company and to terminate his contract.

The taxpayer was not in business for himself and kept no regular books of account. His income-tax returns were made on the basis of cash receipts and disbursements.

The shares of the common stock of Walworth Brothers, Inc., had a fair market value in 1919 of $28.50 per share. The shares of stock of Walworth Sales Corporation had no market value at any time.

### DECISION.

The deficiency, if any, should be computed in accordance with the following opinion. Final determination will be settled on 15 days' notice, in accordance with Rule 50.

### OPINION.

SMITH: In his original income-tax return for 1917, the taxpayer did not report the receipt of any income in respect of 166 shares of stock of Walworth Brothers, Inc., which were charged to him at par value as salary on the corporation's books of account for the year 1917. He understood that these shares of stock were a gift to him and, accordingly, that he received no taxable income from this source.

An inspection of the original contract made between John P. Walworth and Charles W. Walworth, Lawrence, Mass., and the taxpayer, dated September 30, 1916, shows that the shares of stock were to be paid to the taxpayer "if he faithfully performs his said duties to the corporation for a period of three years from this date." It was provided that the shares of stock would be held in escrow by the Walworths until the taxpayer had completed his three years of service. If this had been done the taxpayer would not have received any income in respect of the shares of stock until they were actually received at the end of the three-year term. For the original contract of September 30, 1916, there was substituted a contract dated September 30, 1917, which provided in part that:

WHEREAS, James R. Lister has been in the employ of said copartnership and intends to continue in the employ of said corporation at a cash salary of one hundred dollars per week, to be paid to him weekly, and as additional compensation certain shares of stock as hereinafter provided, said stock, however, to be paid to him only in the event that he faithfully performs his duties to said corporation for a period of three years from September 30, 1916;

Now THEREFORE: * * *

(10) It is further agreed that semi-annually during said period of three years there shall be credited to the party of the second part on the books

of the corporation one-sixth of the par value of said five hundred shares of common stock of Walworth Bros., Incorporated and one-sixth of said one hundred shares of stock of Walworth Sales Corporation of no nominal or par value, which shall be carried as an obligation of the party of the first part to the said James R. Lister for services rendered during the preceding six months, but which shall be cancelled on delivery of said stock at the end of said period of three years. * * *

We can not doubt, in view of this language of the contract, that the shares of stock of Walworth Brothers, Inc., and of Walworth Sales Corporation were intended to be paid to the taxpayer and were paid to him as compensation for services to be rendered Walworth Brothers, Inc., over a three-year period ended September 30, 1919. To the extent that the shares of stock at the time they came into the *possession* and *ownership* of the taxpayer had a cash value, such cash value constitutes income of the taxpayer in the year of such receipt or ownership.

The evidence before us indicates an attempt on the part of Charles W. Walworth and John P. Walworth, on behalf of Walworth Brothers, Inc., to relieve the corporation from a large part of its income and excess-profits-tax liability for the years 1917, 1918, and 1919. An inspection of the original contract dated September 30, 1916, shows that the two Walworth brothers desired to compensate the taxpayer, who had been in their service for many years. The common stock of the corporation had been issued to them. They decided to give to the taxpayer 500 shares of the common stock but, before he could receive it, he must agree to work for Walworth Brothers, Inc., for a period of three years at a salary of $100 per week. This contract on its face never contemplated that the corporation should be subjected to any expense in respect of the gift of the shares.

When the terms of the income and profits-tax law of 1917 became known, Charles W. Walworth and his attorney apparently conceived a means of escaping a large part of the tax liability which was cast upon the corporation by the taxing act. There was first organized the Walworth Sales Corporation. The evidence before us and the testimony of one of the officers of the corporation indicate that the only excuse for the existence of this corporation was to reduce income-tax liability. It had the same office as Walworth Brothers, Inc., in New York City, and it was simply operated as the selling end of the business. Although the cost of selling was only about 1½ per cent of the selling price, the sales corporation was allowed a commission of 7½ per cent upon sales. The profits of the sales corporation were, under an agreement entered into by Walworth Brothers, Inc., and the sales corporation, to be used in acquiring the preferred stock of Walworth Brothers, Inc., owned by Charles W. Walworth and John P. Walworth, and the evidence is to the effect that approxi-

mately $200,000 of the preferred stock was acquired through the earnings of this corporation.

Although the 500 shares of stock which were to be given to the taxpayer did not belong to Walworth Brothers, Inc., the substituted contract of September 30, 1917, which the taxpayer was led to accept, provides that the shares of stock of both Walworth Brothers, Inc., and Walworth Sales Corporation are loaned to Walworth Brothers, Inc., "to enable this agreement to be carried out." The contract further provides that it is "understood and agreed that if at the end of three years the said party of the second part [the taxpayer] has earned said stock, or, on account of death, the said stock has been delivered in accordance with this agreement, the obligation of the corporation to return or pay for said stock to said parties of the third part will at the end of said period of three years be cancelled." This language indicates that it was never the intention of the contracting parties that the corporation should be required to pay for the shares of stock.

We are convinced from a consideration of the entire evidence that the giving of the stock to the taxpayer never resulted in any expense to Walworth Brothers, Inc., and that, if it charged on its books of account any salary as having been paid to the taxpayer during the three-year period of the contract in excess of $100 per week, its books of account do not reflect actual facts.

Even though Walworth Brothers, Inc., did not pay the taxpayer during the tax years in question any amount in excess of $100 per week, this does not mean that the taxpayer did not derive any income from his employment by Walworth Brothers, Inc., in addition to the $100 per week cash paid him. The 500 shares of common stock of Walworth Brothers, Inc., and 100 shares of stock of Walworth Sales Corporation were paid to the taxpayer by Charles W. Walworth and John P. Walworth, in consideration of services to be performed for the corporation over a three-year period. The fair value of those shares at the time they became his absolute property constituted taxable income to him. But when did they become his absolute property, and what was their value at that date?

An inspection of the substituted contract shows that the ownership of the shares of stock was to remain in Charles W. Walworth and John P. Walworth until the taxpayer had completed three years of service to Walworth Brothers, Inc. At the end of the period the certificates for the shares were to be delivered to the taxpayer "relieved of all trusts as his absolute property." If the taxpayer ceased to be employed by the corporation prior to the end of the period, he forfeited all his rights to the shares of stock. During the period the

taxpayer could not assign the shares to any one, except Charles W. Walworth and John P. Walworth, and any attempt to hypothecate or assign his rights in them to others would forfeit all his interests in them. Under these specific provisions of the agreement, we do not consider that the actual delivery of the certificates for a part of the shares to the taxpayer in 1918 and 1919, prior to the end of the three-year period, was such a modification of the contract as to make the value of the shares at the date of receipt income to the taxpayer. The stock certificates delivered to the taxpayer in 1918 and in the early part of 1919 were impressed with a trust, to hold the shares for the real owners, namely, Charles W. Walworth and John P. Walworth. The taxpayer came into the ownership of the shares only upon the completion of the three years of service in the latter part of 1919.

During the year 1918 the taxpayer received from Charles W. Walworth $2,400, in consideration of which he relinquished all his right to and interest in 24 shares of Walworth Brothers, Inc., which he was to receive in absolute ownership at the termination of the three-year period. The receipt of this money was income to the taxpayer in the year 1918. During the year 1919 the taxpayer came into absolute possession and ownership of 476 shares of the common stock of Walworth Brothers, Inc., and, also, 100 shares of the stock of Walworth Sales Corporation. What was the fair market value of those shares at the date they came into the ownership of the taxpayer?

The evidence is to the effect that the shares of stock of both corporations were closely held and that there were no sales in the open market. In 1919, Henry Finegold was offered $8,000 or $9,000 by Charles W. Walworth for approximately 444 shares of the common stock of Walworth Brothers, Inc. Finegold refused the offer and then, in order to get Finegold out of the company, he was finally paid $20,000 for his shares. This is at the rate of approximately $45 a share but, in our opinion, this does not reflect the actual value of the shares of stock, even though at the time dividends at the rate of $6 a year were being paid upon them. The common stock of Walworth Brothers, Inc., received by the taxpayer, which was not taken back by Charles W. Walworth at a price which enabled him to pay his income taxes, was sold by the taxpayer in 1921 for $12 a share. From all the evidence we conclude that the stock received by the taxpayer was worth, at the date of its receipt in 1919, $28.50 a share. The shares of stock of Walworth Sales Corporation received by the taxpayer apparently never had any fair market value and the taxpayer never realized a dollar for his 100 shares of stock received. The taxpayer realized no income from the receipt of these 100 shares. In the early part

of 1919, the taxpayer relinquished his right to 36 shares of common stock of Walworth Brothers, Inc., and received from Charles W. Walworth $3,600. For the purpose of computing the income of the taxpayer for the year 1919, this should be treated as a sale of 36 shares at $100 a share; the cost to the taxpayer of those shares was $28.50 a share. In 1920, the taxpayer sold 32 shares to Charles W. Walworth at $100 a share and derived a profit of $71.50 a share upon such sale.

At the hearing the taxpayer moved to amend his petition by having an alleged excess payment of income tax for the year 1917, in the amount of $2,516.64, credited against any deficiency which might be found to be due from the taxpayer for either of the years 1918 or 1919. The taxpayer alleged that a claim for the refund of the overpayment of tax for the year 1917 had been filed with the Commissioner within five years from the date of the payment of the tax, and that under the decision of this Board in *Appeal of Hickory Spinning Company*, 1 B. T. A. 409, the taxpayer was entitled to the credit. Counsel for the Commissioner did not admit the filing of a claim for the refund within five years from the date of the payment of the tax, and the taxpayer adduced no proof of the filing within such period. In the absence of information upon this point, the request for the credit must be denied. The question whether the Board would have jurisdiction to allow such credit in computing the net deficiency provided the filing of the claim for refund within the five-year period had been proven, is not herein determined.